In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00090-CR


______________________________




DENNIS BARFIELD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Harrison County, Texas


Trial Court No. 2005-0852




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 When Harrison County Sheriff Tom McCool and Sergeant Bryan Hill of his office
encountered motorcyclist Dennis Barfield late one night in 2005, Sergeant Hill asked Barfield how
much he had had to drink. Barfield replied, "Too damn many." The officers testified at trial that
Barfield was impaired because of his consumption of alcohol, based on the presence of a strong odor
of alcohol, intoxication indicators from the horizontal gaze nystagmus test, Barfield's unsteadiness,
and his admission that he had drunk about six beers. The State also introduced the results of a breath
sample analyzed by an Intoxilyzer 5000--which indicated in two tests that Barfield had a 0.112 and
a 0.108 blood-alcohol content. The trial court instructed the jury that it could find Barfield guilty
of driving while either not having the normal use of his faculties because of alcohol, or having a
measured blood-alcohol content of 0.08 or more. The jury convicted Barfield for driving while
intoxicated. (1)

 Barfield structures his appellate brief into two stated points of error, but we conclude he
substantively makes out but one. Barfield's first point complains that the Intoxilyzer 5000 should
have been subject to cross-examination; his second contending that denying him the right to cross-examine the State's Intoxilyzer expert was error. After reviewing the substance of his arguments and
the record on which they are based, we will address Barfield's real contention--the one actually
developed and briefed (2)--that the trial court improperly limited his cross-examination of the State's
breath-testing expert, Rex Swords.

 The record provides context for our review. After the State introduced evidence about the
results of the Intoxilyzer test, Barfield's counsel then cross-examined the technical supervisor who
maintained the device. After eighty pages of cross-examination by Barfield's counsel, the trial court
stated that it would allow no more questions. In so doing, the court did not state that the machine
was per se unassailable, but instead opined that the science behind the machine had been found to
be reliable, and that the remaining issues were whether the State had proved the machine was
operating properly and whether the operator followed the requisite procedures. (3)
 Barfield's counsel
argued that this ruling violated his due-process right to confront and cross-examine the witness. He
later made a fifty-page bill of exceptions during which he questioned the expert further about the
operation of the device.

 Barfield specifically complains the trial court improperly excluded him from pursuing five
areas of examination that were necessary in order to enable the jury to properly weigh the validity
of the results produced by the breath-testing machine: (1) that the machine stores internally, and can
print out a report showing, the number of times that machine has malfunctioned, (2) that the machine
allows a tolerance of plus or minus .02 of alcohol in 210 liters of breath, (3) elements other than
ethyl alcohol in a subject's breath could affect the machine's results, (4) the machine's warranty does
not warrant that it will properly analyze for blood-alcohol content, and (5) the machine's inability
to test the temperature of a subject's breath, plus the presence of heating elements in the machine,
can lead to a falsely high reading for blood-alcohol content or can lead to an invalid result.

(1) Reporting on Machine Malfunctions

 Barfield's counsel asked Swords about the types of malfunctions that could occur and the
error messages the machine would print out when different variables were not within proper
parameters. He asked Swords if he knew how many tests were run using the machine during a
twenty-five-day period during which the test at bar was performed--Swords did not know
individually, and did not have records with him which would have shown this number. Swords
acknowledged that there were a number of factors which would invalidate a test, and set out in some
detail both the factors and the way that the machine would indicate that such errors had occurred. 
Counsel did not specifically ask Swords whether the machine kept records that could be printed out
to show how many times the machine had malfunctioned. Even when counsel did ask that question, 
the response was that Swords was unsure about whether a printout showing the number of invalid
tests could be generated.

(2) Machine Tolerance Allowed

 The fact that the machine had a .02 (4) tolerance for its control tests--tests run on known,
"control" samples at the time the subject's breath was to be tested, to determine whether the machine
was operating properly--was clearly raised and placed before the jury during cross-examination. 

(3) Elements Other than Ethyl Alcohol in a Subject's Breath

 Swords acknowledged that other elements could affect the results, and he was questioned
before the jury at length about some of those elements: radio interference, alcohol vapors in the
mouth instead of the lungs, and alcohol in the air in the room. Swords also testified there was a
presumption that, if other substances were present, the machine would register interference with the
test. 

(4) The Machine's Warranty

 There was no attempt made to place before the jury the fact that the Intoxilyzer's warranty
did not warrant its accuracy for breath testing.

(5) Temperature Problems

 The facts that the Intoxilyzer could not measure the subject's breath temperature and that it
had heating elements to heat the breath, were examined and placed before the jury at length during
the course of Barfield's cross-examination of Swords. Although different words were used when the
subject was covered during the bill of exceptions, Barfield cannot contend successfully that he had
no, or insufficient, opportunity to cross-examine the State's expert on this matter. In fact, he did, at
length and effectively.

 As the State points out, Barfield was allowed, during his some eighty pages of initial cross-examination of Swords and his some seven pages of recross-examination of Swords--all before the
jury--to get into evidence all but the warranty information.

 Although a defendant's right to confrontation and cross-examination is constitutionally
safeguarded, the right is not absolute. Chambers v. Mississippi, 410 U.S. 284, 295 (1973); Huff v.
State, 897 S.W.2d 829, 839 (Tex. App.--Dallas 1995, pet. ref'd). The trial court retains great
latitude in imposing reasonable limitations on cross-examination. Virts v. State, 739 S.W.2d 25, 28
(Tex. Crim. App. 1987). The court may properly limit the scope of cross-examination to prevent
harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally
relevant interrogation. Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). When
considering whether a trial court's decision to exclude testimony is error, we must determine whether
the trial court abused its discretion. Love v. State, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993). 
This inquiry depends on the facts of each case. Id. at 904; Roberts v. State, 963 S.W.2d 894, 901
(Tex. App.--Texarkana 1998, no pet.).

 The trial court permitted considerable cross-examination, but ultimately, after allowing a
considerable amount of highly repetitive testimony, terminated the examination. The critical issues
were before the jury by cross-examination, and based on the length and nature of the questioning,
we do not believe that the trial court abused its discretion by ending the examination when it did. 
Counsel has provided no cogent argument based on the record or on the law to show this Court the
contrary. 

 Given the sequence of events set out above, we conclude Barfield had, and exercised, his
adequate opportunity to cross-examine the State's expert witness about the matters asserted in his
brief.

 Further, even if we found that Barfield's rights were violated, counsel has made no effort to
perform any type of harm analysis that might show how any error contributed to his conviction or
punishment. See Tex. R. App. P. 44.2(a). (5)
 In that regard, we note that the jury charge permitted
conviction for driving while intoxicated either because of proof of intoxication by testimony or by
test. Even if the evidence failed as to the measurement of the breath sample, on this record, the jury
could have convicted based on Barfield's own statements and the officers' testimony.

 We affirm the judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: January 26, 2007


Do Not Publish
1. He was sentenced to 180 days' confinement and a $2,000.00 fine. 
2. In his appellate brief, as he begins to argue his point of error number one, Barfield asks
whether Intoxilyzer results are admissible without meeting a three-pronged test of reliability. 
However, he does not develop any complaint about the admission of the Intoxilyzer test results, nor
does he point out any place at which he objected to the admission of those results. His principal
discussion under point one addresses alleged deficiencies of the breath-testing machine, including
tolerances and lack of temperature control. The real focus under that point is his argument that he
should have been permitted to more extensively attack the manner in which the machine applies the
scientific principles behind breath testing to determine blood-alcohol content.

 As he begins his argument of what he calls point of error number two, Barfield argues that
an Intoxilyzer result is not automatic proof of guilt. He also accuses the trial court of erroneously
overruling Barfield's objections--without specifying what objections were overruled--and
wrongfully misleading the jury on how it was to evaluate the evidence. He additionally seems to
complain that the trial court instructed the jury to find guilt based on the Intoxilyzer results. 
However, he specifies no jury instruction that was allegedly erroneous, and it appears that his
argument in that regard is also suggesting that the trial court misled the jury to believe that it was
required to accept the results as correct. 

 We will read his argument to assert one error, the limitation of his cross-examination of the
State's breath-testing expert. Because of lack of specificity and multifariousness in his briefing, 
Barfield waives any other alleged error.

 This Court has repeatedly warned litigants not to combine multiple issues into a single point
of error, thereby risking our overruling the composite point of error as multifarious. See, e.g., Dickey
v. State, 189 S.W.3d 339, 341 (Tex. App.--Texarkana 2006, no pet.); Newby v. State, 169 S.W.3d
413, 414 (Tex. App.--Texarkana 2005, no pet.); Harris v. State, 133 S.W.3d 760, 764 n.3 (Tex.
App.--Texarkana 2004, pet. ref'd); Parra v. State, 935 S.W.2d 862, 875 (Tex. App.--Texarkana
1996, pet. ref'd).
3. Barfield does not directly attack that pronouncement of the trial court. That may be because
the trial court's statement is correct. The Legislature has determined that the science underlying
breath testing is valid, and its application is valid if administered by individuals certified by, and
using methods approved by the rules of, the Texas Department of Public Safety. Reynolds v. State,
204 S.W.3d 386, 390 (Tex. Crim. App. Oct. 18, 2006); see Tex. Transp. Code Ann. § 724.064
(Vernon 1999); see also Mireles v. Tex. Dep't of Public Safety, 9 S.W.3d 128, 131-32 (Tex. 1999);
Stevenson v. State, 895 S.W.2d 694, 696 (Tex. Crim. App. 1995).


4. Fully stated, the tolerance is .02 grams of alcohol per 210 liters of breath.
5. See  Long   v.   State,   No.   PD-1888-04,   2006   WL   2861076,   at   *1   (Tex.   Crim.
App. Oct. 4, 2006); Jones v. State, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) ("The reviewing
court should 'calculate, as nearly as possible, the probable impact of the error on the jury in light of
the other  evidence.'").  




he Texas Family Code, which provides for termination of parental
rights in cases where the parent knowingly commits a crime and is incarcerated or imprisoned and
is unable to care for the child for two years from the date of the filing of the petition. S.E.W. did not
challenge the constitutionality of Section 161.001(q) in the trial court, he raises this issue for the first
time on appeal. 

 As a rule, a claim, including a constitutional claim, must have been asserted in the trial court
in order to be raised on appeal. Tex. R. App. P. 33.1; Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex.
1993); Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807, 813 (Tex. 1959); Walker v. Employees
Retirement Sys., 753 S.W.2d 796, 798 (Tex. App.-Austin 1988, writ denied). 

 A facial challenge to the constitutionality of a statute may be raised for the first time on
appeal. Rose v. State, 752 S.W.2d 529, 552-53 (Tex. Crim. App. 1987) (op. on reh'g); Rabb v. State,
730 S.W.2d 751, 752 (Tex. Crim. App. 1987). In a facial challenge, the challenging party contends
that the statute, by its terms, always operates unconstitutionally. See Tex. Workers' Comp. Comm'n
v. Garcia, 893 S.W.2d 504, 518 (Tex. 1995) (citing New York State Club Ass'n v. New York City,
487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988); United States v. Salerno, 481 U.S. 739,
745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)). In other words, a challenger must establish that
no set of circumstances exists under which the statute would be valid. Salerno, 481 U.S. at 745;
Wilson v. Andrews, 10 S.W.3d 663, 670 (Tex. 1999); Brenneman v. State, 45 S.W.3d 729, 732 (Tex.
App.-Corpus Christi 2001, pet. ref'd). The United States Supreme Court further observed in Salerno
that just because a statute "might operate unconstitutionally under some conceivable set of
circumstances is insufficient to render it wholly invalid, since we have not recognized an
'overbreadth' doctrine outside the limited context of the First Amendment." Salerno, 481 U.S. at
745; see also New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113, 1129
(1982); United States v. Raines, 362 U.S. 17, 21-22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). However,
an "as applied challenge" only requires the challenger to demonstrate that the statute operates
unconstitutionally when applied to the challenger's particular circumstances. Garcia, 893 S.W.2d
at 518 n.16. 

 Care in the analysis of constitutional challenges must be taken because such challenges take
different forms with different results. Rodriguez v. State, 71 S.W.3d 800, 802 (Tex. App.-Texarkana
2002, no pet.). A facial challenge to the constitutionality of a statute on which a defendant's
conviction is based contests a court's jurisdictional power to enforce the statute under any
circumstances; a challenge to the statute as applied in the defendant's particular circumstances does
not. McGowan v. State, 938 S.W.2d 732, 739-42 (Tex. App.-Houston [14th Dist.] 1996), aff'd, 975
S.W.2d 621 (Tex. Crim. App. 1998). Thus, the former may be raised for the first time on appeal,
while the latter is waived unless it is raised in the trial court. Id. at 741-42 (op. on reh'g); see also
Garcia v. State, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994) (holding that because a statute
providing for the jury charge was neither facially unconstitutional nor void ab initio, the appellant
was required to object at trial in order to preserve error for purposes of appeal); see generally 43A
George E. Dix et al., Texas Practice: Criminal Practice and Procedure §§ 42.253-54 (2d
ed. 2001). 

 Because S.E.W. specifically complains that the termination of his parental rights violates his
constitutional rights under the Texas Constitution, he has made an "as applied challenge." By failing
to raise a constitutional challenge in the trial court, he has waived this contention on appeal. We
overrule S.E.W.'s second point of error.

 In S.E.W.'s final point of error, he contends the evidence is factually insufficient to support
the trial court's finding that it is in the best interest of B.S.W. to terminate his parental rights. 
Review of factual sufficiency of the evidence under a clear and convincing standard requires us to
determine whether the evidence is sufficient to make the existence of the facts highly probable, not
whether the evidence supporting the finding is sufficient to make the existence of fact more probable
than not, as in ordinary civil cases. In re D.T., 34 S.W.3d 625, 632 (Tex. App.-Fort Worth 2000,
pet. denied). That is, we must consider whether the evidence is sufficient to produce in the mind of
the fact-finder a firm belief or conviction as to the truth of the allegation sought to be established. 
Id.; Faram v. Gervitz-Faram, 895 S.W.2d 839, 843 (Tex. App.-Fort Worth 1995, no writ). We are
required to consider all of the evidence in the case in making this determination. Maritime Overseas
Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998). Accordingly, S.E.W. must show that the evidence
is so weak or that the evidence to the contrary is so overwhelming that the trier of fact could not have
reasonably concluded there was a high probability the termination was in the best interest of the
child. 

 In Holley v. Adams, the Texas Supreme Court provided us with a nonexclusive list of factors
to help determine the best interest of the child: (1) the desires of the child; (2) the emotional and
physical needs of the child now and in the future; (3) the emotional and physical danger to the child
now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the child; (6) the plans for the
child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed
placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544
S.W.2d 367, 371-72 (Tex. 1976). This listing is by no means exhaustive, but does indicate a number
of considerations which either have been or would appear to be pertinent. 

 This case involves a young child born in August 1998 and therefore too young to express her
desires. There is no evidence S.E.W. has ever cared for the child, providing her with physical,
financial, or emotional support. The evidence clearly shows that the child may have lived with or
been cared for by S.E.W's mother for awhile, but there is no evidence whatsoever that during that
period, S.E.W. had any contact with the child. He is currently incarcerated, and no one offered on
his behalf to care for the child. S.E.W. has never met B.S.W.; he has been incarcerated since before
her birth. His testimony reveals he has had no contact with the mother of the child since the child's
birth. He contends his family will support the child until his release; however, no family member
came forward to seek custody of the child. S.E.W. complains the State furnished no home study or
service plan; however, there was no home for the State to study. The mother's parental rights had
already been terminated. Although there is some evidence S.E.W.'s mother may have cared for the
child in the past. S.E.W. testified his attempts to contact his mother have been unsuccessful. 

 Under the third Holley factor, S.E.W.'s propensity toward anti-social behavior, as
demonstrated by his criminal convictions and his behavior while in prison, is evidence that he may
be an emotional or physical danger to B.S.W. now and in the future. S.E.W. has no job with which
to support the child, and it is purely speculative as to when S.E.W. will be released from prison. 
S.E.W. filed no claim of paternity with the paternity registry and has not attempted to maintain
contact with B.S.W. since his incarceration. 

 The evidence is factually sufficient to support the trial court's finding that it is in the best
interest of the child to terminate S.E.W.'s rights. The State proved each of its required elements with
clear and convincing evidence. We overrule S.E.W.'s final point of error.

 We affirm the trial court's judgment.



 Ben Z. Grant

 Justice


Date Submitted: August 6, 2002

Date Decided: September 18, 2002


Publish
1. Twenty-eight states prohibit corruption of blood. This provision in the Texas Constitution
was in response to English common law, which provided that the estates of those convicted of a
felony would be forfeited to the king. See George D. Braden et al., Constitution of the State
of Texas: An Annotated and Comparative Analysis 74 (1977).